# EXHIBIT A

FILED
2025 OCT 23 01:46 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-31565-7 SEA

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**COUNTY OF KING**

| | |
|---|---|
| LAUREN VANWORMER and MALLORY SANTIC, on their own behalf and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>URBAN OUTFITTERS, INC.<br><br>Defendant. | **Case No. _______________**<br><br>**CLASS ACTION COMPLAINT (RCW 19.190, 19.86) AND REQUEST FOR JURY TRIAL** |

## I. NATURE OF THE ACTION

1. This is a class action brought by Named Plaintiffs Lauren VanWormer ("VanWormer") and Mallory Santic ("Santic") (collectively "Named Plaintiffs") against Urban Outfitters, Inc. ("Urban Outfitters" or "Defendant") for false and misleading email marketing.

2. Defendant sends two types of emails to Washington consumers which contain false or misleading information in the subject lines.

3. First, Defendant sends emails with subject lines that falsely represent unqualified discounts on purchases without disclosing material exclusions ("Percentage Discount Emails"). The subject lines of the Percentage Discount Emails imply a straightforward percentage discount on the recipient's entire purchase (such as "15% off

sitewide" or "20% off your purchase" or "15% Off Your Entire Purchase"), without limitations or exclusions, enticing consumers to open the email in anticipation of a broad bargain. Upon opening the email, however, the body reveals that there are significant exclusions that do not qualify for the percentage discount.

4. The Percentage Discount Emails contain subject lines that are false or misleading because they omit material exclusions, leading reasonable consumers to believe that they will receive the promised percentage discount on their entire purchase. These omissions are material as they mislead reasonable consumers about the discount's scope, inducing interest in purchases that may not qualify and affect purchasing decisions.

5. Under FTC Guides Against Deceptive Pricing at 16 C.F.R. § 233.1, bargain advertising like percentage-off offers must be genuine and not deceptive; reductions should be from a regular price without undisclosed limitations that undermine the claimed savings.

6. Defendant's Percentage Discount Emails that contain subject lines with unqualified percentage discounts off the purchase are misleading as the exclusions contained in the fine print within the body of the email substantially restrict the offer's applicability, failing to disclose terms "at the outset" in a manner that avoids misunderstanding. Defendant knowingly omits these exclusions in Percentage Discount Emails subject lines to drive email opens and engagement, as evidenced by their consistent use of fine-print disclaimers in promotional emails.

7. Second, Defendant sends emails that misstate the duration of given promotions, in an apparent effort to drive sales by creating a false sense of urgency ("Limited Sale Emails"). These misstatements are material because they mislead

reasonable consumers about sale durations, inducing urgency that affects purchasing decisions, as recognized by the FTC in 16 C.F.R. § 233.5.

8. The subject lines of the Limited Sales Emails falsely claim that a certain sale or discount is limited to a specific time, such as "today's deal" or "today only" or "ends today[,]" when, in reality, the offer lasts longer than advertised or the item has already been on sale for longer than advertised.

9. Defendant also uses its preconceived "sale extensions" as an excuse to send consumers additional emails purporting to notify them that a sale is ending or that a sale has been extended. This practice causes consumers' inboxes to become inflated with spam.

10. Defendant's practice of sending Percentage Discount Emails and Limited Sale Emails that contain false and misleading information in the subject line violates the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, and the Washington Consumer Protection Act, RCW 19.86.

11. By sending Percentage Discount Emails and Limited Sale Emails with false and misleading information to Named Plaintiffs and the Class (defined below), Defendant clogs email inboxes with false information and violates Named Plaintiffs and Class members rights to be free from deceptive commercial emails.

12. Named Plaintiffs bring this action as a class action on behalf of persons residing in Washington who also received Defendant's false and misleading emails. Named Plaintiffs requested relief includes an injunction to end these practices, an award to Named Plaintiffs and Class members of statutory damages under RCW 19.190.040 (1) and treble damages under RCW 19.86.090 for each illegal email sent, and an award of attorneys' fees and costs.

## II. PARTIES

13. Named Plaintiff VanWormer is a citizen of Washington, residing in King County, Washington.

14. Named Plaintiff Santic is a citizen of Washington, residing in Clark County, Washington.

15. Defendant Urban Outfitters is a corporation formed under the laws of the State of Pennsylvania. Defendant currently is, and at all relevant times in the past has, engaged in substantial business activities in Washington.

16. Defendant owns and operates a large online marketplace, sells its products in physical store locations throughout the state, and sends the marketing emails at issue in this Complaint to consumers throughout Washington.

## III. JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this civil action pursuant to, without limitation, Section 6 of Article IV of the Washington State Constitution (Superior Court jurisdiction, generally), RCW 19.86.090 (Superior Court jurisdiction over Consumer Protection Act claims) and RCW 19.190.090 (Superior Court jurisdiction over Commercial Electronic Mail Act claims).

18. This Court has personal jurisdiction over Defendant under RCW 4.28.185. This Court may exercise personal jurisdiction over the out-of-state Defendant because the claims alleged in this civil action arose from, without limitation, Defendant's purposeful transmission of electronic mail messages to consumers within the State of Washington. In addition, Defendant intended, knew, or is chargeable with the knowledge that its out-of-state actions would have a consequence within Washington.

19. This Court also has personal jurisdiction over Defendant under RCW 19.86.160. For example, and without limitation, Defendant engaged and is continuing to engage in conduct in violation of RCW 19.86 which has had and continues to have an impact in Washington which said chapter reprehends.

20. Venue is proper in King County Superior Court because Defendant has its residence in King County. RCW 4.12.025. Currently and at all relevant times, Defendant has transacted business in King County, including without limitation by sending the marketing emails alleged herein to residents of King County, and maintaining stores for the transaction of business within King County.

## IV. FACTUAL ALLEGATIONS

### A. The CEMA prohibits initiating or conspiring to initiate the transmission of commercial emails that contain any false or misleading information in the subject lines.

21. Washington's Commercial Electronic Mail Act ("CEMA") regulates deceptive email marketing.

22. "CEMA was enacted to protect concrete interests in being free from deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial emails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. 2019).

23. The Washington Supreme Court recently confirmed this understanding, holding that RCW 19.190.020(1)(b) "prohibits the use of any false or misleading information in the subject line of a commercial e-mail." *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 583 (2025).

24. An injury occurs anytime a commercial email is transmitted that contains false or misleading information in the subject line. *Id.* at 1011. In *Brown*, the Washington Supreme Court reaffirmed that "the injury is receiving the e-mail that violates CEMA," and that a plaintiff need not show actual damages to recover statutory penalties. *Brown*, 4 Wn.3d at 585.

25. Under CEMA, it is irrelevant whether misleading commercial emails were solicited. *Harbers*, 415 F. Supp. 3d at 1011. The Washington Supreme Court echoed this point in *Brown*, emphasizing that the statute is not limited to deception about the nature or solicitation of the message but applies broadly to any false or misleading subject line. *Brown*, 4 Wn.3d at 590, 594.

26. CEMA creates an independent but limited private right of action which can be asserted by a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.030(1)(b). A plaintiff who successfully alleges and proves such a violation may obtain, among other things, an injunction against the person who initiated the transmission. RCW 19.190.090(1). In addition, the statute authorizes statutory damages of $500 per violation. RCW 19.190.040(1); *see also Brown*, 4 Wn.3d at 585 (confirming that no showing of actual damages is required to recover statutory damages under CEMA).

27. It is a violation of the Consumer Protection Act, RCW 19.86 *et seq.*, to initiate the transmission or conspire with another person to initiate the transmission of a commercial electronic mail message that contains false or misleading information in the subject line. RCW 19.190.030(1). As the Washington Supreme Court explained, CEMA

violations are *per se* violations of the CPA because the Legislature recognized that such conduct is categorically contrary to the public interest. *Brown*, 4 Wn.3d at 592.

28. To establish a violation of Washington's CPA, a claimant must establish five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that affects the public interest, (4) injury to plaintiff's business or property, and (5) causation. *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

29. Washington and federal courts have held that a plaintiff states a CPA claim solely by alleging a violation of the CEMA. *See State v. Heckel*, 143 Wash.2d 824, 24 P.3d 404, 407 (2001).

**B. Defendant initiates or conspires to initiate the transmission of commercial emails that contain false or misleading information in the subject lines.**

30. Defendant has initiated (or conspired to initiate) the transmission of hundreds of commercial electronic mail messages with false or misleading subject lines to Named Plaintiffs and the Class. The emails were electronic mail messages, in that they were each an electronic message sent to an electronic mail address; the emails from Defendant also referred to an internet domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

31. Defendant sent the emails for the purpose of promoting its goods for sale.

32. The emails were sent at Defendant's direction and were approved by Defendant.

**1. Percentage Discount Emails**

33. Defendant frequently sends emails with subject lines promising a percentage off the recipient's purchase. The body of these emails (and fine print), however, contains significant and material exclusions.

34. Defendant uses the terms "sitewide" and "purchase" and "order" interchangeably in their subject line.

35. For example, on December 5, 2021, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "DEAL OF THE DAY * 20% OFF your purchase[.]"

36. On March 17, 2022, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "LUCKY YOU [four leaf clover emoji] take 17% OFF your purchase[.]"

37. On November 22, 2022, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "it's happening: 25% OFF YOUR ENTIRE PURCHASE[.]"

38. On December 5, 2022, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "today's deal: 25% OFF YOUR ENTIRE ORDER[.]"

39. On March 30, 2023, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "[megaphone emoji] 20% OFF your purchase[.]"

40. On December 6, 2023, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "ONE MORE DAY: 30% Off Your Purchase[.]"

41. On February 27, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "EARLY ACCESS: 29% off our ENTIRE site[.]"

42. On February 29, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "Leap Year Sale! 29% OFF Sitewide[.]"

43. On April 2, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "one more chance! 30% OFF YOUR PURCHASE[.]"

44. On August 30, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "LABOR DAY SALE * 25% OFF SITEWIDE[.]"

45. On September 2, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "ENDS SOON: 25% OFF SITEWIDE[.]"

46. On September 9, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "ends today: 15% OFF your order[.]"

47. On September 20, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "starts now: 20% OFF YOUR PURCHASE[.]"

48. On September 23, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "[megaphone emoji] LAST CALL: 20% OFF SITEWIDE[.]"

49. On October 15, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "[gift box emoji] NOW EXTENDED: 20% OFF SITEWIDE [gift box emoji.]"

50. On November 17, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "don't forget: 20% OFF your order[.]"

51. On November 29, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "[stars emoji] 40% OFF your purchase [stars emoji.]"

52. On December 1, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "40% OFF your purchase [siren emoji]"

53. These subject lines imply that a straightforward discount will be applied on the recipient's purchase, without limitations or exclusions.

54. The fine print at the bottom of each email, however, states that exclusions will apply from the unqualified offer in the subject line.

55. Thus, if the recipient purchases any product or service that is excluded from the discount, they will not receive the discount offered in the subject line.

56. Such omissions as to what constitutes "sitewide" or "purchase" or "order" in the subject lines of these types of emails create a reasonable probability that consumers will be misled about the true scope of the discount.

57. And Defendant understands how to restrict an offer in the subject line of an email because from time to time, Defendant does in fact restrict the scope of the sale in the subject line.

58. For instance, on April 15, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "[emoji] LAST DAY: up to $50 OFF your purchase[.]"

59. And on December 3, 2024, Defendant sent Named Plaintiffs and Class members an email with a subject line that stated: "LAST CHANCE: 40% OFF (pretty much) EVERYTHING[.]"

### 2. Limited Sale Emails

60. Defendant also sends emails with subject lines advertising the "limited" nature of sales, discounts, and prices. For example, Defendant sends emails that refer to "today's deal" or "flash sale" or state a sale is for "today only" or "ends today," implying urgency and finality, but then follows up with extensions of the same offer. By stating that a sale is only on for a limited time, Defendant suggests an offer's rarity or urgency, stimulating consumers' desire to get the deal before it ends. Defendant knowingly understates sale durations in subject lines, as evidenced by their routine extensions of advertised "limited" periods, to create this false urgency. These misstatements are material because they mislead reasonable consumers about sale durations, inducing urgency that affects purchasing decisions, as recognized by the FTC in 16 C.F.R. § 233.5.

61. Defendant's Limited Sales Emails are false or misleading because the sales, discounts, and prices advertised as limited in time are not actually limited in time, as Defendant routinely extends them beyond the advertised end dates.

62. For instance, on February 22, 2023, Defendant sent an email with a subject line stating "new True Religion (+ NOW EXTENDED: 50% OFF)[.]"

63. On November 25, 2023, Defendant sent an email with a subject line stating "dream in pink [emojis] (40% Now Extended)[.]"

64. Also on November 25, 2023, Defendant sent an email with a subject line stating "Black Friday Sale: NOW EXTENDED [handclap emoji.]"

65. On February 4, 2024, Defendant sent an email with a subject line stating "now extended: 25% Off Spring [flower emoji.]"

66. And on April 9, 2024, Defendant sent an email with a subject line stating "NOW EXTENDED [hour glass emoji] 40% OFF[.]"

67. The following timelines related to these types of "limited" sales illustrate this pattern.

68. On November 29, 2021 ("Cyber Monday"), Defendant sent an email with a subject line stating "LAST CHANCE: CYBER MONDAY FLASH SALE[.]"

69. The Cyber Monday sale was offering "50% OFF SALE STYLES[.]"

70. But the "50% off" Cyber Monday sale did not end on Cyber Monday. Rather, on November 30, 2021, Defendant sent an email with a subject line stating "[megaphone emoji] NOW EXTENDED! 50% OFF FLASH SALE [megaphone emoji.]"

71. On October 3, 2022, Defendant sent an email with a subject line stating "ENDS TODAY: 20% OFF[.]"

72. But the "20% off" sale did not end on October 3, 2022. Rather, on October 4, 2022, Defendant sent an email with a subject line stating "NOW EXTENDED * 20% OFF * SHOP NOW" expressly extending the same promotion beyond the advertised deadline.

73. The same tactics played out again starting on October 14, 2024, when Defendant sent an email with a subject line stating "20% off ends today!"

74. But the "20% off" sale did not end on October 14, 2024. Rather, on October 15, 2024, Defendant sent an email with a subject line stating "[gift box emoji] NOW EXTENDED: 20% OFF SITEWIDE [gift box emoji]" expressly extending the same promotion beyond the advertised deadline.

75. By falsely stating the duration of the sale and issuing serial "extension" emails, Defendant misled consumers regarding the true time limits of the offer.

**C. Named Plaintiffs and Washington residents have received commercial emails from Defendant that contain false or misleading information in the subject lines.**

76. Defendant sent the misleading commercial emails to email addresses that Defendant knew, or had reason to know, were held by Washington residents, either because (i) Defendant had a physical Washington address that was associated with the recipient; (ii) Defendant had access to data regarding the recipient indicating that they were in Washington state; or (iii) information was available to Defendant upon request from the registrant of the internet domain name contained in the recipient's electronic mail address.

77. Defendant knows where many of its customers reside through several methods.

78. First, for any person that places an order online from Defendant, Defendant associates an email address with a shipping address and/or billing address for that order.

79. Second, Defendant encourages online shoppers to create online accounts. Customers save information in their Defendant accounts along with their email address, such as shipping addresses, billing addresses, and phone numbers.

80. Third, discovery will show that Defendant employs methods to track the effectiveness of its marketing emails and to identify consumers that click on links contained in Defendant's marketing emails, including by identifying their physical location.

81. Fourth, Defendant also utilizes cookies, pixels, and other online tracking technologies to identify and locate the consumers that click on links contained in Defendant's marketing emails and that visit its website.

82. Fifth, discovery will also show that Defendant employs sophisticated third parties who create profiles of customers and potential customers, including their email address and physical location.

83. Lastly, Defendant also knew, should have known, or had reason to know that it sends marketing emails to Washington residents due to its large presence in the state and the volume of marketing emails it sends to people around the country.

84. At all times relevant to this Complaint, Named Plaintiffs resided in Washington.

85. Named Plaintiffs have received Defendant's emails for several years.

86. Named Plaintiffs have received hundreds of marketing emails from Defendant within the last four years, and typically received more than five emails every week.

87. Named Plaintiffs received emails from Defendant through email providers that have data limits. Named Plaintiffs currently have several hundred emails from Defendant in their inboxes, but discovery will show that they have received more emails that they have deleted to conserve the finite space available in their email inboxes.

88. Defendant knows, or has reason to know, that Named Plaintiffs' email addresses are held by Washington residents. Named Plaintiffs have accounts with Defendant that reflect their home address in Washington. Named Plaintiffs have made several purchases from the Defendant's website that have been delivered to her home in Washington. Named Plaintiffs have also repeatedly clicked on links contained in Defendant's emails from her computer, which was registered to an IP address in

Washington at all relevant times, or from their smart phone, which was located in Washington unless Named Plaintiffs happened to be traveling.

89. Named Plaintiffs received the emails with false and misleading subject lines described above. Named Plaintiffs received additional emails with false and misleading subject lines from Defendant.

90. Defendant sent these emails to Named Plaintiffs for the purpose of promoting Defendant's goods for sale.

91. Defendant initiated the transmission or conspired to initiate the transmission of these commercial electronic mail messages to Named Plaintiffs.

92. Named Plaintiffs do not want to receive emails with false and misleading subject lines from Defendant, though they would like to continue receiving truthful information from Defendant regarding its products. Due to Defendant's conduct, however, Named Plaintiffs cannot tell which emails from Defendant contain truthful information or which emails are spam with false and misleading information designed to spur them to make a purchase.

93. Named Plaintiffs have identified more than fifty (50) Defendant emails with false and misleading subject lines. These emails were sent between October 6, 2021 and the date this Complaint was filed, showing that Defendant engaged in this conduct throughout the relevant time period.

94. Named Plaintiffs continue to receive emails with false and misleading subject lines. Because Named Plaintiffs have deleted some of the emails they have received from Defendant, they are not presently able to identify all the emails with false and misleading subject lines they received. Defendant is aware of all the emails it has sent

Named Plaintiffs and discovery will show the full number of illegal false and misleading emails Defendant has sent throughout the relevant time period.

## V. CLASS ACTION ALLEGATIONS

95. Class Definition. Pursuant to Civil Rule 23(b)(3), Named Plaintiffs bring this case as a class action on behalf of a Class defined as:

> All Washington residents[1] who, within four years before the date of the filing of this complaint until the date any order certifying a class is entered, received an email from or at the behest of Defendant that contained a subject line stating or implying that 1) a percentage discount off would apply to the recipient's "purchase" or "order" "off sitewide" with no conditions or exclusions; or 2) a sale, discount, price, or other offer would end soon or on a definitive date, and the sale, discount, price, or other offer continued to be offered for at least an additional day.
>
> Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

96. Numerosity. The Class is so numerous that joinder of all members is impracticable. The Class has more than 1,000 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

97. Commonality. There are numerous questions of law and fact common to Named Plaintiffs and members of the Class. The common questions of law and fact include, but are not limited to:

---

[1] Residents" shall have the same meaning as "persons" as defined in RCW 19.190.010(11) and RCW 19.86.010(a).

a. Whether Defendant sent commercial electronic mail messages with false and misleading information in the subject lines;

b. Whether Defendant initiated the transmission or conspired to initiate the transmission of commercial electronic mail messages to recipients residing in Washington State in violation of RCW 19.190.020;

c. Whether a violation of RCW 19.190.020 establishes all the elements of a claim under Washington's Consumer Protection Act, RCW 19.86 *et seq.*;

d. Whether Named Plaintiffs and the proposed Class are entitled to an injunction enjoining Defendant from sending the unlawful emails in the future; and

e. The nature and extent of Class-wide damages.

98. Typicality. Named Plaintiffs' claims are typical of the claims of the Class. Named Plaintiffs' claims, like the claims of the Class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

99. Adequacy. Named Plaintiffs will fairly and adequately protect the interests of the Class. Named Plaintiffs have retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions. Counsel for Named Plaintiffs have significant experience representing consumers in cases involving violations of CEMA. Named Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Named Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Class.

100. Predominance. Defendant has a standard practice of initiating or conspiring to initiate commercial electronic mail messages to email addresses held by Washington State residents. The common issues arising from this conduct predominate over any individual issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

101. Superiority. Named Plaintiffs and members of the Class have been injured by Defendant's unlawful conduct. Absent a class action, however, most Class members likely would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. The members of the Class are readily identifiable from Defendant's records and there will be no significant difficulty in the management of this case as a class action.

102. Injunctive Relief. Defendant's conduct is uniform as to all members of the Class. Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole. Named Plaintiffs further alleges, on information and belief, that the emails described in this Complaint are substantially likely to continue in the future if an injunction is not entered.

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

(Violation of Washington's Commercial Electronic Mail Act, RCW 19.190 *et seq.*)

103. Named Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

104. Washington's CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or conspiring to initiate the transmission of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that contains false or misleading information in the subject line. These prohibitions target falsity or deception, as interpreted in *Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025).

105. Defendant is a "person" within the meaning of the CEMA, RCW 19.190.010(11).

106. Defendant initiated the transmission or conspired to initiate the transmission of one or more commercial electronic mail messages to Named Plaintiffs and proposed Class members with false or misleading information in the subject line.

107. Defendant's acts and omissions violated RCW 19.190.020(1)(b). Defendant knew or had reason to know of the falsity of the subject lines, as shown by its repeated patterns of omitting conditions and exclusions in subject lines while burying them in the fine print of the body of the email.

108. Defendant's acts and omissions injured Named Plaintiffs and proposed Class members, as receipt of such misleading emails constitutes injury under CEMA and the CPA as a matter of law, clogging inboxes and wasting time.

109. The balance of the equities favors the entry of permanent injunctive relief against Defendant. Named Plaintiffs, the members of the Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. A permanent injunction against Defendant is in the public interest. Defendant's unlawful

behavior is, based on information and belief, ongoing as of the date of the filing of this pleading; absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

110. Pursuant to RCW 19.190.040(1), Named Plaintiffs and each Class member is entitled to the greater of $500 per commercial electronic mail message sent in violation of RCW 19.190.020(1)(b) or actual damages.

111. In addition, Named Plaintiffs and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.020(1)(b).

**SECOND CLAIM FOR RELIEF**

(*Per se* violation of Washington's Consumer Protection Act, RCW 19.86 *et seq*.)

112. Named Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

113. Named Plaintiffs and Class members are "persons" within the meaning of the CPA, RCW 19.86.010(1).

114. Defendant violated the CEMA by initiating or conspiring to initiate the transmission of commercial electronic mail messages to Named Plaintiffs and Class members that contain false or misleading information in the subject line, amounting to material deception.

115. A violation of CEMA is a "per se" violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq*. RCW 19.190.030.

116. A violation of the CEMA establishes all five elements of Washington's Consumer Protection Act as a matter of law.

117. Defendant's violations of the CEMA are unfair or deceptive acts or practices that occur in trade or commerce under the CPA. RCW 19.190.100.

118. Defendant's unfair or deceptive acts or practices vitally affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.100.

119. Pursuant to RCW 19.190.040(1), damages to each recipient of a commercial electronic mail message sent in violation of the CEMA are the greater of $500 for each such message or actual damages, which establishes the injury and causation elements of a CPA claim as a matter of law.

120. Defendant engaged in a pattern and practice of violating the CEMA. As a result of Defendant's acts and omissions, Named Plaintiffs and Class members have sustained damages, including $500 in statutory damages, for each and every email that violates the CEMA. The full amount of damages will be proven at trial. Named Plaintiffs and Class members are entitled to recover actual damages and treble damages, together with reasonable attorneys' fees and costs, pursuant to RCW 19.86.090.

121. Under the CPA, Named Plaintiffs and members of the Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the CPA in the future.

122. Defendant's deceptive practices are ongoing and likely to continue absent injunction, as evidenced by its consistent email patterns, vitally affecting the public interest in truthful commercial communications.

## VII. REQUEST FOR RELIEF

WHEREFORE, Named Plaintiffs, on their own behalf and on behalf of the members of the Class, request judgment against Defendant as follows:

A. That the Court certify the proposed Class;

B. That the Court appoint Named Plaintiffs as Class Representative;

C. That the Court appoint the undersigned counsel as counsel for the Class;

D. That the Court grant injunctive relief as permitted by law to ensure that Defendant will not continue to engage in the unlawful conduct described in this Complaint;

E. That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendant's compliance with the CEMA;

F. That Defendant be immediately restrained from altering, deleting, or destroying any documents or records that could be used to identify members of the Class;

G. That Named Plaintiffs and all Class members be awarded statutory damages in the amount of $500 for each violation of the CEMA pursuant to RCW 19.190.040(1) and treble damages pursuant to RCW 19.86.090;

H. That the Court enter an order awarding Named Plaintiffs reasonable attorneys' fees and costs; and

I. That Named Plaintiffs and all Class members be granted other relief as is just and equitable under the circumstances.

## VIII. TRIAL BY JURY

Named Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

Z LAW, LLC

Dated: October 23, 2025

/s/ David M. Trojanowski (WSBA # 56258)_____

Cory L. Zajdel, Esq. (*pro hac vice forthcoming*)
David M. Trojanowski, Esq. (WSBA # 56258)
2345 York Road, Suite B-13
Timonium, Maryland 21093
(443) 213-1977
clz@zlawmaryland.com
dmt@zlawmaryland.com

*Attorneys for Named Plaintiffs*